## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO

PEDRO K. ENRIQUEZ,

      Plaintiff,

v.                                                                          CIV. 11-0495 GBW

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration,

      Defendant.


### MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO REVERSE OR REMAND


THIS MATTER is before the Court on Plaintiff's Motion to Reverse or Remand Administrative Agency Decision ("Motion"), filed on April 16, 2012. *Doc. 24.* The parties consented to have the undersigned magistrate judge conduct all proceedings and enter final judgment. *Docs. 4, 12.* The Court has reviewed Plaintiff's Motion; Defendant's Response to Plaintiff's Motion to Reverse or Remand, *doc. 25* ("Response"); Plaintiff's Reply Brief, *doc. 26* ("Reply"); and the relevant law. Additionally, the Court has reviewed and considered the administrative record or transcript. *Docs. 19, 20,* ("Tr."). Because the vocational expert ("VE") testified that Dr. Pataki's postural limitations did not preclude returning to work and because the position of assembler (small products) was not the only job that the Administrative Law Judge ("ALJ") found

that Plaintiff could perform, the alleged corresponding errors were harmless.

Moreover, the residual functional capacity ("RFC") found by the ALJ, and her

credibility determination, were supported by substantial evidence.  Accordingly, the

Court will **DENY** Plaintiff's Motion and **DISMISS** the case **with prejudice**.

### Standard of Review

The standard of review in a Social Security appeal is whether the

Commissioner's final decision is supported by substantial evidence and whether the

correct legal standards were applied.  *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008)

(citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir.

1992)).  If substantial evidence supports the Commissioner's findings and the correct

legal standards were applied, the Commissioner's decision stands and the plaintiff is

not entitled to relief.  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v.

Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th

Cir. 2003).  A court should meticulously review the entire record but should neither

re-weigh the evidence nor substitute its judgment for that of the Commissioner.

*Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d

at 1214; *Doyal*, 331 F.3d at 760.  The decision "is not based on substantial evidence if it is

overwhelmed by other evidence in the record or if there is a mere scintilla of evidence

supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.  While a court may

not re-weigh the evidence or try the issues de novo, its examination of the record as a

whole must include "anything that may undercut or detract from the [Commissioner]'s

findings in order to determine if the substantiality test has been met." *Grogan v.

Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).  "The possibility of drawing two

inconsistent conclusions from the evidence does not prevent [the] findings from being

supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)

(citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

A court's review is limited to the Commissioner's final decision.  42 U.S.C.

§ 405(g).  Generally, the Commissioner's final decision is that of the ALJ, but in some

cases, it is that of the Appeals Council.  *Williams v. Bowen*, 844 F.2d 748, 749 (10th Cir.

1988).  Where the Appeals Council has modified the ALJ's decision, the Appeals

Council's decision is the final decision of the Commissioner, *White v. Schweiker*, 725 F.2d

91, 94 (10th Cir. 1984), regardless of whether the Appeals Council officially granted or

denied review, *McDaniel v. Sullivan*, 972 F.2d 356,, at *4 (10th Cir. 1992) (unpublished)

(citing *Williams v. Bowen*, 844 F.2d 748, 749 (10th Cir. 1988)).  However, if the Appeals

Council denies review and does not modify the ALJ's decision, the ALJ's decision

3

becomes the Commissioner's final decision, and the district court reviews the ALJ's

decision.  *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994) (citing 20 C.F.R. § 404.981).

Additionally, the Tenth Circuit Court of Appeals has held that in some

situations, a district court must review the ALJ's decision but also consider evidence

beyond that which was considered by the ALJ.  *See Martinez v. Barnhart*, 444 F.3d 1201,

1207–08 (10th Cir. 2006); *O'Dell*, 44 F.3d at 859.  Pursuant to 20 C.F.R. § 404.970(b), any

new and material evidence that relates to the period on or before the date of the ALJ's

decision shall be considered by the Appeals Council in determining whether to review

the ALJ's decision.  Because a court reviews the final decision based on "the record as a

whole," it will consider the evidence that was before the ALJ as well as the new and

material evidence that was before the Appeals Council.  *O'Dell*, 44 F.3d at 858 (citing

*Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

Considering all of the evidence in the administrative record, a court decides whether

the ALJ's findings are supported by substantial evidence and whether the correct legal

standards were applied. *Maes*, 522 F.3d at 1096.

### Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits ("DIB"), a person establishes a

disability when he is unable "to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

In light of this definition for disability, a five-step sequential evaluation process ("SEP") has been established for evaluating a disability claim.  20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the SEP, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity;" and (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) his impairment(s) meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work."  20 C.F.R. § 404.1520(a)(4)(i)–(iv); *Grogan*, 399 F.3d at 1261.  At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his RFC, age, education, and work experience.  *Grogan*, 399 F.3d at 1261.

## Background

The Plaintiff, Mr. Enriquez, was born on July 29, 1955.  Tr. 113.  He completed eleventh grade, Tr. 159, and he has worked as a cashier/checker, a small products assembler, and a tractor trailer driver.  Tr. 50 (vocational expert's categorization); *see*

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

*generally* Tr.153 (Plaintiff's description).  On May 5, 2008, Mr. Enriquez applied for a

period of disability and DIB, alleging a disability-onset date of April 21, 2008. Tr. 113,

145.  His application was denied initially, Tr. 69–72, and upon reconsideration, Tr. 83–

85.  Mr. Enriquez requested a hearing, which took place before ALJ Ann Farris on May

4, 2010.  Tr. 74–75 (request); Tr. 22–61 (hearing transcript).

At the hearing, Mr. Enriquez was represented by attorney Lindsay Griffel of the

Jeff Diamond Law Firm.[2]  Tr. 22 (hearing representation), Tr. 62 (law firm).  The ALJ

heard testimony from Mr. Enriquez and from a VE.  In pertinent part, Mr. Enriquez

testified about how his neck problems affect him, including that the pain between his

neck and left shoulder is exacerbated when he turns his head to the left. Tr. 31, 33; *see*

*also* Tr. 42–43 (left side neck pain).  He further testified that moving his left arm affected

his neck, for example, when there is weight on his arm.  He could not estimate how

much weight he could "stand on his arm," but he testified that he carries a vacuum

cleaner with both hands and estimated that it weighs 25 or 35 pounds.  Tr. 44.  He

testified that lifting or pushing could cause "stress or tension" on his left side.  Tr. 45.

For example, he testified that he could push a grocery cart with only his left hand

"probably for some period of time there, but that's about it."  *Id*.  He explained that if he

used both hands, "I . . . push what I can."  *Id*..

---

[2] Attorney Jeff Diamond represents Mr. Enriquez before this Court.  *Doc. 24-1* at.25.

Also at the hearing, utilizing the Dictionary of Occupational Titles ("DOT"), the VE categorized Mr. Enriquez's past work as "[1 C]ashier checker.  211.462-014, right [sic], semi-skilled, is SVP[3] three.  [2] Assembler, small products, 706.684-022, light exertion, SVP two, unskilled.  [3] Tractor trailer driver—and this was the oil field—904.683.010.  Medium exertionals, semi-skilled, SVP four."  Tr. 50.

Considering Mr. Enriquez's past work, the ALJ posed the following hypothetical scenario to the VE:

> Assume a person of the same age, education and work history as the claimant could perform the requirements of the light work, should work in only the moderate noise levels, and should not be required to hold his head downward and to the left?
> . . . .
> Can such a person perform the requirements of the claimant's past work?

Tr. 51.  The VE testified that such a person could perform the duties of cashier/checker and assembler (small products).  Tr. 51-52 .  He explained that the neck restriction could be accommodated by repositioning the feet, so that the person was looking down but not to the left.  Tr. 51-53.  Furthermore, the VE testified that the person could perform

---

[3] " Specific Vocational Preparation [SVP] is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  Dictionary of Occupational Titles, App. C (4th ed. 1991), available at, 1991 WL 688702.

the requirements of these jobs even if he could not rotate his neck at all because he

could still rotate his trunk.  Tr. 57–58.

Mr. Enriquez's attorney posed the following to the VE:

> I would like to add the additional limitations.  He's still
> limited to right [sic] work.
> . . . .
> Medium noise levels.  No neck rotation, just trunk rotation,
> and he [sic] the following postural limitations.  And I'm
> looking at Exhibit E 10F, at three.  He had [sic] only
> occasionally climb ramps, stairs, ladders, and occasional
> balance [sic], occasional stooping, occasional kneeling,
> occasional crouching, and occasional crawling.
> . . . .
> And then I think it's also applicable, because he's gained
> even more weight and he still have [sic] problems with the
> medication.  As far as environmental limitations, avoid all
> exposure to hazardous machinery, heights, et cetera,
> especially given his problems turning to spy . . . . those
> hazards.  Can he do his past relevant work?

Tr. at 58–59.  The VE testified that he could return to his past work as a cashier/checker.

*Id.*  However, the VE testified that if his standing and walking were restricted to two

hours, he would not be able to return to his past work.  *See* Tr. 59-60.

The ALJ issued her decision on May 20, 2010, and she found that Mr. Enriquez

was not disabled at step four of the five-step SEP.  Tr. 21.  At step one, the ALJ found

that Mr. Enriquez had not been engaged in substantial gainful activity (SGA) since his

alleged onset date of April 21, 2008.  Tr. 13.  The ALJ, therefore, proceeded to the next

step.  At step two, the ALJ found that Mr. Enriquez had four severe, medically

determinable impairments: (1) degenerative disc disease of the cervical spine, (2) morbid obesity, (3) moderate hearing loss in both ears, and (4) a history of coronary artery disease with stent placement.  Tr. 13.  The ALJ further found that Mr. Enriquez had a psychological impairment, vision and hearing problems, high blood pressure, obstructive sleep apnea (OSA), and vertigo, none of which was severe.  Tr. 14–15.  Because the ALJ found that Mr. Enriquez had at least one severe, medically determinable impairment, she proceeded to the next step.

At the third step, the ALJ found that none of the step-two impairments, alone or in combination, met or medically equaled any of the Listings found in 20 C.F.R. § 404, subpart P, appendix 1.  Tr. 14.  If any Listing had been met or medically equaled, the ALJ would have found Mr. Enriquez disabled at this step. *See* Tr. 14.  Because the ALJ did not find that any Listing was met, she proceeded in the SEP.

Before step four, the ALJ determined Mr. Enriquez's RFC.  She found that, with some additional restrictions, Mr. Enriquez was capable of performing "light work."[4]

---

[4] The Social Security Administration explains "light work" as follows:

> *Light work*.  The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing--the primary difference between sedentary and most light jobs.  A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he must have not more than moderate exposure to noise, and his work can require no neck rotation but he can rotate from the waist.

Tr. 16.  To determine the RFC, the ALJ considered "the entire case record."  Tr. 17.  In particular, she considered Mr. Enriquez's pain between his neck and left shoulder and his testimony that the heaviest thing he can lift is a vacuum cleaner.  *Id.*  Moreover, "[t]he fact that [Mr. Enriquez] has degenerative disc disease that has affected his neck and left shoulder has also been included in [the RFC] with his ability to perform a [sic] light work."  Tr. 19.

Furthermore, the ALJ found Mr. Enriquez's statements about his symptoms to be partially credible.  She found that his "medically determinable impairments could

---

road-roller operator (skilled and semiskilled jobs in these particular instances). Relatively few unskilled light jobs are performed in a seated position.

"Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.  Sitting may occur intermittently during the remaining time. The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping.  Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk.  They require use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work.

Social Security Ruling (SSR) 83-10, 1983 WL 31251, at *5–*6 (1983) (citing 20 C.F.R. § 404.1567(b)).

reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC]."  Tr. 17.

At step four, the ALJ found that Mr. Enriquez had the RFC to return to his past relevant work as a cashier/checker.  Tr. 20.  Alternatively, she found that Mr. Enriquez could return to his past work as a small products assembler.  Tr. 21.  Hence, the ALJ found Mr. Enriquez not disabled at step four, which ended the SEP.  *See* Tr. 20–21.  The ALJ did not need to proceed to step five, and she did not.  *See id.*  Ultimately, the ALJ found that Mr. Enriquez has not been under a disability as defined in the Social Security Act at any time from the alleged onset date, April 21, 2008, through the date of the decision, May 20, 2010.  Tr. 21.

On July 19, 2010, Mr. Enriquez requested review of the ALJ's decision by the Appeals Council.  Tr. 6–7.  On April 5, 2011, the Appeals Council accepted additional evidence, which was not available to the ALJ, and made it part of the record.  Tr. 5.  The Appeals Council denied review of the ALJ's decision but also modified the ALJ's findings.  Tr. 1–5.  "The Appeals Council does agree that the [ALJ] erred in not finding [Plaintiff's] vertigo to be a severe impairment[.]"  Tr. 2.  Nonetheless, the Appeals Council concluded that Plaintiff's vertigo, even if severe, did not "affect[ Plaintiff's]

ability to do [his] Past Relevant Work as a cashier/checker." *Id*. Although Plaintiff recounts the Appeal Council's action, he does not challenge it. *See doc. 24-1* at 1, 15, 23.

Accordingly, the Court reviews the ALJ's decision as modified by the Appeals Council.

**Medical Evidence**

The record contains treatment notes from Plaintiff's primary care physician Robert E. Smith, Jr., D.O., from August 3, 2007 through September 5, 2008. Tr. 211–14, 268–69. Dr. Smith treated Mr. Enriquez regularly during this time and referred him to numerous specialists. *Id.*

Cardiologist M. Alan Sharif, M.D., submitted a report of his evaluation of Mr. Enriquez to Dr. Smith on August 7, 2007. Tr. 233–24. Dr. Sharif noted that Mr. Enriquez had lost a significant amount of weight after his bariatric surgery but had not lost much weight recently. Tr. 233. Dr. Sharif diagnosed hypertension, hyperlipidemia, morbid obesity, and coronary artery disease. Tr. 234. He discussed sleep apnea with Plaintiff and encouraged him to consider more weight loss. *Id.*

Mr. Enriquez saw Nelson Lum, M.D., for hypothyroidism on September 26, 2007. Dr. Lum confirmed Mr. Enriquez's hypothyroidism and adjusted his medications. Tr. 208–09. Between October 1, 2007, and November 20, 2007, Mr. Enriquez presented at the emergency room five times for sleep problems, heart problems, and cramps in a

12

limb.  Tr. 243–62.  A chest radiograph showed no acute pulmonary process on September 25, 2007.  Tr. 231.  Ultrasounds taken on October 25, 2007, to assess Mr. Enriquez's leg pain and swelling showed no evidence of deep venous thrombosis of either lower extremity and no significant peripheral vascular disease.  Tr. 229-30.

On September 20, 2008, Dan M. Cox, Ph.D., reviewed Mr. Enriquez's medical records and assessed his depression as not severe.  Tr. 349–62.  On April 21, 2008, Mr. Enriquez presented at the emergency room again.  Tr. 235–42.  This time, he sought treatment for fatigue, shortness of breath, and light-headedness.  Tr. 235.  He followed up with Dr. Smith on May 14, 2008.  Tr. 269.  Dr. Smith ordered an MRI, which was normal.  Tr. 272.

Mr. Enriquez stopped working in April of 2008 due to vertigo.  Tr. 276–77.  He was approved for short term disability benefits from the Hartford Insurance Company for portions of April and May, 2008.  Tr. 278–79.  On June 4, 2008, Dr. Smith completed a statement of disability, opining that Mr. Enriquez was disabled due to vertigo and would not be able to return to work, even with restrictions, indefinitely.  Tr. 273.  On referral from Dr. Smith, Thomas F. Neal, M.D., evaluated Mr. Enriquez on June 5, 2008, but found nothing wrong with his ears, save for hearing loss.  Tr. 316.

Dr. J. Pataki completed a non-examining assessment of Mr. Enriquez's RFC on July 1, 2008.  Tr. 302–09.  Dr. Pataki assessed the following restrictions based on Mr.

Enriquez's coronary artery disease, OSA, high blood pressure, vertigo, and obesity:
occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand
and/or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour
workday, and push and/or pull without limitation.  Tr. 303.  Dr. Pataki further opined
that Mr. Enriquez was limited to only occasionally climbing, balancing, stooping,
kneeling, crouching, and crawling.  Tr. 304.  Finally, Dr. Pataki indicated that
concentrated exposure to fumes, odors, dusts, gasses, poor ventilation, and the like
should be avoided.  Tr. 306.  Eileen M. Brady, M.D., reviewed Mr. Enriquez's medical
records again on September 27, 2008.  Tr. 281.  She concurred with the RFC assessed by
Dr. Pataki.  *Id.*

The Commissioner arranged a consultative psychiatric evaluation by Connie Jo
Ponce, Psy.D., on November 12, 2008.  Tr. 282–86.  Mr. Enriquez was not able to
complete the evaluation in one sitting due to his vertigo.  Tr. 283.  Dr. Ponce diagnosed
Mr. Enriquez with depressive disorder, not otherwise specified.  Tr. 286.  On December
5, 2008, Jill Blacharsh, M.D., reviewed Mr. Enriquez's records and completed a
psychiatric review.  Tr. 288–301.  She opined that Mr. Enriquez's depression was not
severe, Tr. 288, and that his resulting functional limitations were only mild, Tr. 298.

A few months later, on March 17, 2009, Mr. Enriquez saw Charles Ogunro, M.D.,
of Hobbs Neurology Clinic, for his neck pain.  Tr. 347.  Dr. Ogunro diagnosed Mr.

Enriquez with migraines.  *Id.*  Dr. Ogunro opined that the frequency of Mr. Enriquez's headaches was due to overuse of ibuprofen.  *Id.*  Dr. Ogunro increased one of Mr. Enriquez's medications, encouraged him to reduce his use of ibuprofen, and planned to start other medications once his blood pressure was controlled.  *Id.*  Dr. Ogunro also ordered a MRI of the cervical spine that showed "C2-3 severe left facet degenerative change with marrow changes suggesting exacerbation of chronic degenerative osteoarthritis [and m]ultilevel degenerative change."  Tr. 346.

Mr. Enriquez had sought support from Division of Vocational Rehabilitation, which referred him to Jennifer Holdman, Au.D., for a hearing evaluation.  Tr. 320.  She found that he suffered from "moderate hearing loss in both ears" and prescribed hearing aids.  *Id.*  Mr. Enriquez, however, by the date of the administrative hearing, had not obtained the hearing aids, Tr. 32, apparently because he could not afford them, Tr. 319.

The record indicates that Mr. Enriquez began seeing Johnny Qubty, M.D., for neck pain on July 22, 2009.  Tr. 324.  Dr. Qubty administered several nerve block injections, which were not effective for Mr. Enriquez.  Tr. 326–34.  Dr. Qubty also referred Mr. Enriquez to physical therapy, Tr. 340, but the record does not indicate whether Mr. Enriquez followed up on these referrals.  Ultimately, Dr. Qubty discharged Mr. Enriquez on January 27, 2010, because he had nothing further to offer.  *Id.*

15

The record also indicates visits with Dr. Cyril Simon of Zia Family Healthcare on September 29, 2009, and May 11, 2010.  Tr. 191, 199–200.  Dr. Simon's notes indicate treatment for various ailments including neck pain, vertigo, and coronary artery disease.  Tr. 199–200.

## Analysis

Remand is not appropriate in this case.  After reviewing the entire record, the Court is not persuaded by Plaintiff's arguments.  To the extent that the ALJ failed to discuss Dr. Pataki's stooping limitation, such failure amounts to harmless error because the VE testified that the limitations at issue did not preclude returning to work. Similarly, any inconsistency between the RFC and the DOT's description of an assembler (small products) amounts to harmless error because the Commissioner alternatively found that Mr. Enriquez could return to his past work as a cashier/checker. Contrary to Plaintiff's arguments, the Court finds that the ALJ did consider the medical evidence and testimony regarding Mr. Enriquez's left arm and further finds that the credibility determination is supported by substantial evidence.  Accordingly, the Court will deny Plaintiff's Motion and affirm the Commissioner's final decision.

16

I.      **To the extent that the ALJ failed to discuss Dr. Pataki's stooping limitation, such failure amounts to harmless error because the VE testified that the limitations at issue did not preclude returning to work.**

Mr. Enriquez presents several arguments related to stooping.  The arguments are convoluted and overlap.  He argues that the ALJ should have included Dr. Pataki's limitations—specifically stooping—in the RFC.  *Doc. 24-1* at 18.  He also argues that the neck restriction that *was* included in the RFC amounted to a stooping restriction.  Even though the VE testified—on examination by Mr. Enriquez's attorney—that Mr. Enriquez could return to his past work as a cashier/checker with Dr. Pataki's stooping restriction *and* the neck restriction, Mr. Enriquez asserts that the VE was wrong.  Mr. Enriquez argues that the VE's opinion conflicts with the DOT and the VE failed to explain the inconsistency.  Thus, it would be error to rely on the VE's opinion.

The Court rejects Plaintiff's arguments for several reasons.  First, the neck restriction does not necessarily amount to an additional stooping restriction.  In fact, the accommodation for the neck restriction described by the VE—repositioning the feet—is different than stooping, which is bending at the waist.  *Compare* Tr. 51 (accommodating neck restriction by moving the feet) *with* Social Security Ruling (SSR) 83-10, 1983 WL 31251, at *6 ("Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist.").  Additionally, the ALJ expressly adopted the feet-repositioning accommodation for the neck restriction.  Tr. 19

("The fact that [Mr. Enriquez] has degenerative disc disease that has affected his neck and left shoulder has also been included in [the RFC] with his . . . having the ability to rotate his whole body rather than rotating his neck."). Thus, the Court sees no conflict between the VE's testimony and the DOT.

Second, the ALJ asked the VE to raise and explain any inconsistencies between his testimony and the DOT, and the VE mentioned none. Tr. 50. So, the ALJ fulfilled her duty of inquiry. *See Poppa v. Astrue*, 569 F.3d 1167, 1173 & n.6 (10th Cir. 2009) (citing SSR 00-4p, 2000 WL 1898704, at *4 (2000)) (ALJ has "affirmative responsibility" to ask VE about any potential conflicts between his testimony and the DOT and to elicit a reasonable explanation for any conflict).

Third, even assuming that the neck restriction amounted to stooping, the VE expressly testified that an individual with, *inter alia*, both the neck restriction and occasional stooping limitation could return to his past work as a cashier/checker. *Compare* Tr. 304 (Dr. Pataki's postural limitations) *with* Tr. 16 (RFC), *with* Tr. 58–59 (hypothetical and VE opinion).

Any failure of the ALJ to discuss Dr. Pataki's stooping limitation, therefore, was harmless error. Dr. Pataki's stooping limitation did not change the VE's testimony that Mr. Enriquez could return to his past work as a cashier/checker. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 733–34 (10th Cir. 2005) (recognizing that harmless error analysis

18

is applicable if "no reasonable administrative factfinder, following the correct analysis,

could have resolved the factual matter in any other way" (internal quotation marks

omitted)); *Seever v. Barnhart*, 188 F. App'x 747, 752 (10th Cir. 2006) (unpublished)

(affirming district court's denial of motion to remand where, *inter alia*, the ALJ's failure

to discuss certain restrictions assessed by a medical source amounted to harmless error

because such restrictions were included in the hypothetical presented to the VE and

relied upon by the ALJ).  Accordingly, remand is not warranted on this issue and

should be denied.

**II.     Any inconsistency between the RFC and the DOT's description of an assembler (small products) amounts to harmless error because the Commissioner alternatively found that Mr. Enriquez could return to his past work as a cashier/checker.**

Plaintiff argues that the VE's testimony regarding the assembler (small products)

job conflicts with the DOT description of the job, and therefore, the ALJ erred in relying

on it.  *Doc. 24-1* at 20–21.  The Commissioner concedes the point but argues that it is

harmless error because the ALJ's alternative finding that Mr. Enriquez could return to

his past work as a cashier/checker supports the ultimate decision of not disabled.  *Doc.

25* at 9–10.  The Court agrees.  Even assuming the conflict as alleged, neither reversal

nor remand would be warranted because the ALJ alternatively properly found that

Mr. Enriquez could return to his past relevant work as a cashier/checker.

III.   **The ALJ considered the medical evidence and testimony regarding Mr. Enriquez's left arm.**

Mr. Enriquez argues that the ALJ ignored his testimony regarding "difficulties picking up objects using his left arm" even though such problems were supported by the medical evidence of his cervical neuralgia.  *Doc. 24-1* at 21; *Doc. 26* at 8 (citing *Hayden v. Barnhart*, 374 F.3d 986, 992–94 (10th Cir. 2004) (analyzing similar issue in terms of credibility assessment)).  Plaintiff concludes, therefore, that the RFC is not supported by substantial evidence.  *Doc. 24-1* at 21.

Although an ALJ must consider a claimant's own assessment of his limitations in formulating the RFC, 20 C.F.R. § 404.1529(c), an ALJ is not required to discuss every piece of evidence, *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).  Here, the record evidences that the ALJ considered Plaintiff's testimony.  Tr. 42–44 (references to Plaintiff's testimony regarding problems with his left arm).  In fact, the RFC is entirely consistent with left arm limitations alleged by Mr. Enriquez.  *Compare* Tr. 16 (RFC) *and* SSR 83-10, 1983 WL 31251, at *5–6 (light work definition), *with* Tr. 42–44 (Plaintiff's testimony regarding his left arm).  Thus, the Court finds that remand is not warranted on this issue because the ALJ considered Mr. Enriquez's allegations of difficulty with his left arm.

**IV.    The credibility determination is supported by substantial evidence.**

Plaintiff challenges the ALJ's credibility determination because he asserts that several of the ALJ's bases for that determination were not supported by substantial evidence.  Although some of the ALJ's reasons, indeed, are not supported by the record, the ultimate credibility determination is still supported by substantial evidence because the ALJ closely and affirmatively linked it to other grounds that Plaintiff does not challenge and that are supported by substantial evidence.

Plaintiff argues that the first three of the following grounds are "patently incorrect," *doc. 24-1* at 23, and the fourth is a "mischaracteriz[ation]"of  the record, *id.* at 24:

1.  [Plaintiff] had "not been compliant with his diet in an effort to lose more weight,"
2.  [R]ecords showed that Mr. Enriquez's "vertigo subsided after being advised (by Dr. Ogunro) to stay off of ibuprofen due to overuse,"
3.  "[T]here are no treating physicians or examining specialists that have expressed the claimant was unable to work due to his impairments," and
4.  Mr. Enriquez's lifestyle was "essentially consistent with light work activity with additional restrictions" because he "cares for his children at home[,] which can be quite demanding both physically and emotionally," occasionally vacuums, does laundry, cooks, drives, shops, and makes jewelry.

*Id.* at 22–23 (quoting Tr. 19) (last alteration in original).  The Commissioner argues that

the ALJ's credibility determination is supported by substantial evidence and that

Plaintiff's argument ignores the deferential standard of review.  *Doc. 25* at 12–15.

The Commissioner is correct, and the parties seem to agree, about the standard

of review.  The district court cannot re-weigh the evidence and can only review an

ALJ's decision to ensure that she applied the correct legal standard and that her

findings are supported by substantial evidence.  *Clifton*, 79 F.3d at 1009.  "Credibility

determinations are peculiarly the province of the finder of fact, and [courts] will not

upset such determinations when supported by substantial evidence."  *Kepler v. Chater*,

68 F.3d 387, 391 (10th Cir. 1995) (internal quotation marks omitted).  Boilerplate

language, however, is insufficient.  *See, e.g., id.; Carpenter v. Astrue*, 537 F.3d 1264, 1266–

70 (10th Cir. 2008); *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004).  Instead, "it is

well settled that [ALJs] must give reasons for their decisions."  *Reyes v. Bowen*, 845 F.2d

242, 244 (10th Cir. 1988).  Although ALJs do not have to discuss "every piece of

evidence," *Clifton*, 79 F.3d at 1010, their "findings as to credibility should be closely and

affirmatively linked to substantial evidence and not just a conclusion in the guise of

findings."  *Kepler*, 68 F.3d at 391 (internal quotation marks and brackets omitted).

The Tenth Circuit Court of Appeals does not "reduce[] credibility evaluations to

formulaic expressions" and it "'does not require a formalistic factor-by-factor recitation

of the evidence.  So long as the ALJ sets forth the specific evidence [s]he relies on in

evaluating the claimant's credibility, the dictates of *Kepler* are satisfied.'"  *White v.*

*Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372

(10th Cir. 2000)).  Finally, where pain is the subject of the credibility dispute, the ALJ

should consider such factors as:

> [1] the levels of medication and their effectiveness, [2] the
> extensiveness of the attempts (medical or nonmedical) to
> obtain relief, [3] the frequency of medical contacts, [4] the
> nature of daily activities, [5] subjective measures of
> credibility that are peculiarly within the judgment of the
> ALJ, [6] the motivation of and relationship between the
> claimant and the other witnesses, and [7] the consistency or
> compatibility of nonmedical testimony with objective
> medical evidence.

*Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993) (quoting *Hargis v. Sullivan*, 945

F.2d 1482, 1489 (10th Cir. 1991)).

Here, the ALJ sufficiently linked her credibility determination to substantial

evidence.  Although, as argued by Plaintiff, some of the ALJ's reasons are not supported

by the record, others are.  The Court finds that the ALJ gave sufficient reasons that are

supported by substantial evidence of record, and therefore, the credibility

determination should be affirmed.

The Court agrees with Plaintiff that, of the four challenged reasons, three of them

are unsupported in the record.  First, there does not appear to be any support for the

23

ALJ's finding that "[Mr. Enriquez] has not been compliant with his diet in an effort to lose more weight." Tr. 18. The ALJ's decision does not cite any support for this conclusion, and the Court finds none. The Commissioner cites to the August 7, 2007 record from Dr. Sharif, in which he asked Mr. Enriquez to "consider future weight loss." *Doc. 25* at 13. The Court finds that no reasonable fact-finder could conclude from this instance alone that Mr. Enriquez was prescribed a weight-loss diet, much less that he failed to comply with it. Although the parties agree that Mr. Enriquez's weight significantly affects his symptoms, *doc. 25* at 14; *doc. 26* at 10, the record does not support the ALJ's credibility determination to the extent that it is based on Mr. Enriquez's noncompliance with a weight-loss diet.

Similarly, the ALJ's finding that Plaintiff's "vertigo subsided after being advised to stay off of ibuprofen due to overuse," Tr. 19, does not appear to be supported by the record. The ALJ's decision cites to no support, the Commissioner offers none, and the Court finds none. In fact, the Appeals Council found that Plaintiff's vertigo persisted when it found that the vertigo was severe at step two. Tr. 2. Thus, to the extent that the ALJ's credibility determination is based on the finding that Plaintiff's vertigo subsided, the determination is not based on substantial evidence.

Third, the ALJ found Mr. Enriquez to be partially incredible because "there are no treating physicians or examining specialists that have expressed the claimant was

24

unable to work due to his impairments." Tr. 19.  However, as Plaintiff points out, *doc. 24-1* at 24, Dr. Smith believed that Mr. Enriquez could not return to work, even with restrictions, indefinitely, Tr. 273.  Therefore, to the extent that the ALJ's credibility determination is based on the finding that no doctor had found him disabled, the determination is not based on substantial evidence.

Fourth, Plaintiff challenges the ALJ's finding that "Mr. Enriquez's lifestyle was 'essentially consistent with light work activity with additional restrictions' because he 'cares for his children at home[,] which can be quite demanding both physically and emotionally,' occasionally vacuums, does laundry, cooks, drives, shops, and makes jewelry." *Doc. 24-1* at 22–23 (alteration in original) (quoting Tr. 19).  Plaintiff makes two arguments related to the ALJ's finding about Mr. Enriquez's lifestyle.

Plaintiff argues that the ALJ's finding that Mr. Enriquez "cares for his children at home" is not supported by the record because the children are adults.  *Doc. 24-1* at 24. Next, Plaintiff argues that the remaining lifestyle findings—that Plaintiff occasionally vacuums, does laundry, cooks, drives, shops, and makes jewelry—do not reasonably support the conclusion that Mr. Enriquez can work on a regular basis.  *Id.*  The Commissioner concedes that "the ALJ likely should not have found Plaintiff's care for his adult children to be persuasive evidence," but he asserts that the remaining aspects

25

of the lifestyle finding properly supported the credibility determination. *Doc. 25* at 14–

15.

The ALJ's lifestyle findings are supported by substantial evidence and

adequately support the credibility determination.  Although Plaintiff testified that his

sons were 20 years old, Plaintiff's wife indicated that he was caring for them "daily"

when they were 18 years old.  Tr. 162 (wife's statements on September 16, 2008).[5]  Based

on this evidence, it was reasonable for the ALJ to find that Plaintiff "cares for his

children at home."  Tr. 19.

Moreover, the ALJ did not err in concluding that Plaintiff's lifestyle—including

caring for his children, performing some household chores, driving when not on his

medications, occasionally shopping, and making jewelry, Tr. 19—was consistent with

light work with some restrictions.  *See* 20 C.F.R. § 404.1529(c)(3)(i); *accord e.g.,  Maxwell v.

Astrue*, 268 F. App'x 807, 811-12 (10th Cir. 2008) (unpublished) (affirming adverse

credibility determination based in part on claimant's description of her lifestyle).

Furthermore, the ALJ made several other findings, beyond those challenged by

Plaintiff, in support of her credibility determination.  Plaintiff does not challenge these

other findings, and they are supported by substantial evidence.  For example, the ALJ

found that:  (1) Plaintiff engaged in some work activity (i.e., making jewelry) since his

---

[5] If the sons were 20 years old on May 4, 2010, then they were at least 18 years old on September 16, 2008.

alleged onset date, (2) Plaintiff had no significant heart problems since his stent

placement in 2005, (3) Plaintiff's reported daily activities could not be objectively

verified, (4) the medical evidence of record was "weak," and (5) "other factors

discussed in th[e] decision" supported her determination.  Tr. 17, 19.

Although some of the reasons for the ALJ's credibility determination are not

supported by the record, other reasons are supported by substantial evidence and

reasonably lead to the conclusion that Mr. Enriquez was not credible to the extent that

his testimony contradicts the RFC.   Consequently, the Court finds that the ALJ here

closely and affirmatively linked her credibility determination to appropriate, substantial

evidence and, as such, committed no reversible error in relation to that finding.  *See*

*Kepler*, 68 F.3d at 391.

## Conclusion

For the reasons stated above, the Court finds that the VE testified that

Dr. Pataki's stooping limitations did not preclude returning to work and small products

assembler was not the only job that the ALJ found that Plaintiff could perform.

Therefore, the alleged corresponding errors were harmless.  Moreover, the RFC and

credibility determination are supported by substantial evidence.  Accordingly:

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse or Remand

Administrative Agency Decision, *doc. 24*, be **DENIED** and that this case be

**DISMISSED.**

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**

28